Derbigny, J.
delivered the opinion of the *489 court. This is an action to recover the amount of a note of hand said to be lost. The plaintiff does not allege that this loss has been occasioned by a fortuitous event, unforeseen accident or overpowering force, the only cases, in which the law permits the introduction of verbal evidence to establish the former existence of a written title, and to prove its contents. But he says, that the provision of our code, which excludes oral evidence in other cases, is not applicable to commercial matters, of which kind he alleges this transaction to be. Supposing, however, such exemption to obtain in favor of commercial dealings, we do not see its applicability to the present case. Negociable notes, payable to order or to bearer, are indeed considered as drawn in the course of trade, and are governed by the same rules as bills of exchange. But, what stamps upon them the character of a mercantile transaction, is their negotiability, or liability to be bartered away for the convenience of commerce. Take that feature from them, and they become simple obligations between man and man, which, so far from bearing any resemblance to commercial transactions, are entirely confined at home, and untransferable, except under conditions adverse to the nature of commercial dealings.
East’n District.
July, 1820.
*490 The note in this case, not being negotiable, we consider the, article of our code, which is relied on by the defendant, as applicable to this claim, and we think that the plaintiff cannot recover the amount of the note, merely on making proof of its former existence, without shewing that its loss happened through one of the causes expressed in the said article; unless he has, by some admission, relieved the plaintiff from the necessity of proving that fact.
We will proceed to examine first, whether the plaintiff has shewn sufficient cause to entitle him to establish his claim by oral evidence ? The law requires proof of a fortuitous event, from which, as we conceive, the loss of the title may be fairly inforced : for, the case can hardly be supposed, where a witness could swear absolutely to the loss of the title, unless he had lost it himself. The French text speaks of the accident by which the party may have lost his title par lequel il auroit pu le perdre. Somewhat differing in that from the English, which says : “the event by which he has lost it." “ If in the fire and pillage of my house (says Pothier, in his treatise on obligations, no. 781) I have lost any papers, among which were notes from my debtor, to whom I had lent money, I ought to be admitted to prove, by witnesses, the sum which I lent &c. *491 In the above case, it is necessary that it should be admitted, or that I should prove, that my house was burnt or pillaged, before I can be permitted to introduce testimonial proof of the loans of money, of which I pretend to have lost the written evidence.” It is enough then to prove a fortuitous event, by which it may be fairly presumed, that the loss complained of, was occasioned ; for if nothing short of a deposition, that the title was seen by the witness, at the very moment of its destruction, was deemed sufficient, it would hardly ever happen that the loss of a title could he supplied by oral proof.
But the fortuitous event, by which the loss is presumed to have been caused, must be proved. Was any such thing done in this case ? We are inclined to think that enough has been shewn to open the door to testimonial proof. What amounts to a fortuitous event, in cases of this nature, must greatly depend on the kind of title which has been lost. A note of hand, sent out for collection, is exposed to more hazards than a sealed bond of a bill of sale in a desk. If when carried about, it should drop from the pocket of the carrier and disappear, would not this be a fortuitous event, with regard to the owner? It would seem just to consider it so. In the present case, a note, which had been so carried *492 about, is returned to the owner at a moment when his shop is full of people. May it not be reasonably inferred, that in the bustle it was misled and lost? And will not that be sufficient to give access to testimonial proof ? We think it ought. In all suits of this kind, much is, of necessity, left to the discretion of courts of justice. The accidental occurrence must be weighed by them, and if deemed sufficient to create a strong presumption of the loss, ought to open the door to oral evidence; for after that proof is permitted to be introduced, they will, in all cases of this nature, hear it with great diffidence, and finally refuse it belief, if not altogether satisfactory.
But should this interpretation still leave some doubt in the mind, as to the sufficiency of the evidence produced, in this case, to create a presumption of the loss, there is one very forcible reason why the rigor of the law, relied on by the defendant, should bend on occasions like this. Whether nothing short of some, very serious accident will suffice to authorise the introduction of oral testimony to prove the loss of a written act, or whether occurrences of less magnitude will be deemed sufficient, in case of the loss of one of those papers which are usually carried about, one thing is, at least, certain, *493 which is, that a law, intended to guard against the e abuses of verbal evidence, can be invoked only by those who deny absolutely the execution of the written act, the existence of which is offered to be proved by parol : for if the party, against whom the loss of the written title is alleged, discloses, in any manner, that he is not ignorant of its former existence, and does not plead its extinction by payment or otherwise, there is not the same danger in admitting parol proof of its contents, and therefore no reason to apply with rigour to his case the law above mentioned.
Is there in this case an absolute denial that the note sued upon did ever exist ? We think not. There are, to be sure, in the answer, expressions which would amount to that, if they stood alone. But the defendant pleads especially, in a manner which destroys their force. He first alleges that, at the time when the obligation is said to have been contracted, be was under age and unable to contract ; and further, that the obligation, if ever contracted (which he denies) was without any legal consideration. Now, although, independently of the general issue, a defendant may set up other means of defence, to use them in case the general denial fails him, such special pleas must be consistent with the general one, not contradictory of it. In *494 this case, the defendant begins by saving that he did not execute the obligation ; but, by and by, he says that the obligation, if ever contracted was without any legal consideration. How can he know whether it was or not, unless be knows first that the obligation did exist ? How can he plead want of legal consideration, without admitting the existence of the note ? But he first denied that the note ever existed. This mode of pleading double, on facts within the knowledge of the party, appears irregular and illegal, and is not in conformity with the positive provision of our statute, which requires the defendant to answer without evasion. He must either deny or admit such facts. He cannot say at once, that he did not, and that he did execute the act for which he is sued ; and when after having said that he did not, he discloses in other words that he did, his denial ought not to avail him.
We, therefore, think, that in a case like this, where there is an implicit admission of the existence of the written title, on the part of the person, who is said to have executed it, there is no occasion for those rigid rules, which require proof of the loss of it by a fortuitous event.
We make no mention of the bill of exceptions, taken by the defendant in the course of *495 the trial below, the point which is contested in it, having been yielded in the court by the plaintiff.
We think upon the whole, that the judgment of the district court is correct; but the judge having omitted to provide for the security of the appellant, in case the note should again appear, we are obliged to reverse the judgment on that account.
It is, adjudged and decreed, that the judgment of the district court be reversed ; and that judgment be entered for the appellee, for fourteen hundred and eighty nine dollars, he the appellee giving security to the appellant, in the like sum that he shall return him his note of that amount, if he should again obtain possession of it, or indemnify him, if he should ever be sued upon that note; it is further ordered, that the appellee pay the costs of this appeal.